UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ERIC MITMAN,
Plaintiff,

v.

TRACY MITMAN (Defendant 1), and
ALICE CUPAIOLO (Defendant 2),

Defendants.

Civil Action No. _____

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
(42 U.S.C. §§ 1983, 1985, and the Fourteenth Amendment)

———

I. INTRODUCTION

1. This action arises from an orchestrated and malicious effort by Defendants to weaponize the legal system to harm, intimidate, and deprive Plaintiff of his constitutionally protected rights. Through coordinated acts of false reporting, submission of manipulated evidence, and misuse of legal process, Defendants retaliated against Plaintiff for protected conduct and violated his liberty and parental rights. Plaintiff seeks redress under 42 U.S.C. § 1983, 42 U.S.C. § 1985, and the Fourteenth Amendment.

———

II. JURISDICTION AND VENUE

2. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as the events giving rise to these claims occurred in Gloucester County, New Jersey.

———

III. PARTIES

4. Plaintiff Eric Mitman resides in Gloucester County, New Jersey.

5. Defendant 1, Tracy Mitman, is Plaintiff's estranged spouse and resides in the same household.

6. Defendant 2, Alice Cupaiolo, is an attorney licensed in New Jersey and acted under color of state law by willfully misusing judicial processes in coordination with Defendant 1.

———

IV. BACKGROUND

7. In January 2023, Plaintiff informed Defendant 1 of his intent to dissolve the marriage. This request was made repeatedly throughout 2023 and 2024 seeking Defendant 1's cooperation and was based on longstanding concerns, including Defendant 1's refusal to seek employment or obtain a driver's license, as well as her deteriorating conduct toward the children and the family dog.

8. Despite Plaintiff's ongoing efforts to initiate an amicable separation and move toward a healthy co-parenting arrangement, Defendant 1 rejected these efforts and remained entirely financially dependent while refusing to take steps toward personal independence. Plaintiff's emotional and physical disengagement from the marriage was documented throughout this period and provides critical context for the malicious and coordinated actions that followed in 2024 and 2025.

9. Plaintiff has remained gainfully employed throughout the marriage and holds an active security clearance. These facts underscore his consistent reliability, professional standing, and ability to provide emotional and financial stability for his children, in contrast to Defendants' pattern of manipulation and bad faith conduct.

V. STATEMENT OF FACTS

10. In August 2024, despite Plaintiff being transparent with Defendant 1 and visiting counsel only days earlier to resolve the marriage, Defendant 1 filed for divorce against Plaintiff. Immediately afterward, she began altering her behavior: becoming unusually affectionate, initiating routine intimate contact, and reframing herself as a nurturing homemaker.

11. Despite filing in August, Defendants made almost no effort to advance the divorce proceedings. Mediation was rejected outright on March 7, 2025, and the only prior settlement offer was so unworkable that Plaintiff's counsel advised it could not serve as a negotiation base.

12. Between August 2024 and mid-2025, Defendant 1 engaged in a sustained pattern of behavior intended to psychologically isolate and destabilize Plaintiff within the shared home. This included selective neglect of household norms—such as intentionally leaving only Plaintiff's dishes unwashed and his recycling untouched—and interference with his parenting time, particularly through restricting his daughter's access using two baby gates. Though these actions may appear minor in isolation, together they reflect a calculated pattern of alienation and coercive control.

13. On March 9, 2025, Defendant 1 escalated a conversation with Plaintiff, appearing to provoke him into conflict. Plaintiff later discovered that the audio of this incident had selectively edited out exculpatory context and submitted to law enforcement by Defendant 1 to support a harassment complaint and request a Temporary Restraining Order (TRO).

14. That same audio was submitted by Defendant 2 to the Family Part of the New Jersey Superior Court as part of a motion to remove Plaintiff from the marital home and restrict his parenting rights.

15. Despite a police investigation yielding no findings of harassment, a domestic violence summary offense was still issued, requiring Plaintiff to retain legal counsel and appear in municipal court.

16. On the morning of April 10, 2025, Defendant 1 contacted law enforcement and falsely alleged that Plaintiff was preventing her from leaving the home with their daughter. In fact, no contact occurred between Plaintiff and Defendant 1 until approximately 7:30 AM. During that brief encounter, Plaintiff remained silent and recorded himself seated with his daughter on his lap for his own protection. Defendant 1 stated, "Stop recording me, it's becoming harassment," and walked away. Plaintiff had no further interaction with her before police arrived. Their son was present throughout the morning and witnessed the events. Responding officers spoke with Plaintiff and made no findings against him. In later court filings, Defendants 1 and 2 falsely stated that the police were contacted following a verbal altercation that never occurred.

17. On the evening of April 16, 2025, Defendant 1 again contacted police based on fabricated claims. When officers arrived, they informed Plaintiff that Defendant 1's daughter reportedly felt "alienated." Plaintiff cooperated fully and was visibly confused by the allegation. In later court filings, Defendants 1 and 2 claimed that Defendant 1 had not intended for police to engage with Plaintiff, but instead contacted law enforcement for guidance. All children were present during both the April 10 and April 16 police encounters. Body camera footage from both incidents confirms Plaintiff's calm demeanor, lack of escalation, and full cooperation, contradicting any implication of threatening or improper conduct.

18. On May 3, 2025, Plaintiff submitted a formal complaint to the Gloucester Township Police Department detailing both incidents. The letter included references to call logs, body camera footage, and text message timelines. No corrective action was taken.

19. On May 6, 2025, the charge summary Domestic Violence offense was conditionally dismissed for 60 days, with the expectation of full dismissal thereafter. Nonetheless, under continued legal pressure and reputational harm—and seeking to avoid further court appearances, legal fees, and disruption to daily life—Plaintiff entered into a civil consent agreement on May 22, 2025, without any adjudication of guilt or evidentiary hearing.

20. On June 18, 2025, after Plaintiff directly confronted both Defendants via the AppClose communication platform regarding the selectively edited audio recording submitted to law enforcement and the court—specifically identifying the omission of critical de-escalation content and the deliberate manipulation of context—Defendants failed to offer any clarification, correction, or acknowledgment. Their continued reliance on the altered version, despite being put on notice, demonstrates knowing falsification and supports the claim that the recording was submitted with actual malice and intent to mislead legal authorities.

21. On June 30, 2025, Plaintiff confronted both Defendants via the AppClose communication platform, explicitly referencing their "coordinated legal effort" to mislead the court and manipulate the legal process. Neither Defendant provided a response, denial, or clarification. This silence, in the face of direct accusation, further evidences joint participation, shared intent, and conscious avoidance of accountability.

22. In July 2025, Defendant 1 entered Plaintiff's personal space wearing a robe with her chest exposed and asked him to fix her swimsuit. When Plaintiff declined to respond or engage, she moved closer in a suggestive manner. Plaintiff, concerned about potential manipulation or false allegations, shook his head no. Defendant 1 then turned back and claimed she still needed assistance. Plaintiff recorded a portion of the interaction on video. The encounter was entirely unrelated to co-parenting and appeared to be a calculated effort to reassert control following the collapse of her earlier legal narratives. Plaintiff promptly documented the incident via AppClose and informed his attorney.

23. Despite almost a year of fear-based behavior, filings, attempted TRO, DV summary offense, motion, and police involvement, the parties ultimately reached a settlement agreement in mid-2025 that included no requests for child protective restrictions or any limitations on Plaintiff's parenting rights. This contradiction further reveals that Defendants never believed Plaintiff posed any actual danger to the children or to Defendant 1, and instead used legal filings to construct a false narrative to gain tactical advantage during litigation.

24. Defendants 1 and 2 jointly orchestrated a series of actions intended to falsely portray Plaintiff as dangerous and unfit, with the goal of significantly impacting Plaintiff's parental rights and depriving him of a fair legal process. This included crafting and submitting selectively edited audio to law enforcement in support of a Temporary Restraining Order (which was denied), filing a false police report that triggered an investigation which yielded no findings, and reusing the same falsified audio as evidence in a civil Motion seeking Plaintiff's removal from the home. Defendants also initiated two additional police responses based on fabricated claims while the minor children and unsecured family dog were present. In parallel, they coordinated with estranged and abusive members of Plaintiff's family to obtain and submit private text messages to the court in an attempt to distort Plaintiff's character and manipulate legal outcomes.

25. Phone records linked to Defendant 1 reflect suspicious timing and communication patterns surrounding key events, including police contact and court filings. These records suggest a coordinated effort involving third parties to influence legal outcomes, surveil Plaintiff, and manipulate the narrative submitted to law enforcement and the court.

----

VI. DEFENDANT 2'S LIABILITY UNDER COLOR OF STATE LAW

26. Though a private attorney, Defendant 2 acted under color of state law by knowingly assisting in the creation and submission of manipulated evidence into formal legal channels, including through her coordination of Defendant 1's police report and court filings. Upon information and belief, Defendant 2 edited or directed the editing of audio evidence, coached Defendant 1 on how to submit it to law enforcement in support of a Temporary Restraining Order, and subsequently used the same falsified material in civil proceedings. By doing so in concert with Defendant 1 and with knowledge of the fabricated nature of the allegations, Defendant 2 actively misused judicial mechanisms and is therefore subject to liability under 42 U.S.C. § 1983.

____

VII. CLAIMS FOR RELIEF

Count 1 – 42 U.S.C. § 1983 – Deprivation of Liberty Without Due Process

    27. Defendants, through a coordinated effort, submitted and relied upon manipulated audio evidence and knowingly false claims to law enforcement. This directly triggered a domestic violence summary offense and coerced Plaintiff into entering a consent agreement under unresolved criminal pressure. Plaintiff was denied a full and fair opportunity to defend himself in court, resulting in the deprivation of liberty without due process, in violation of the Fourteenth Amendment.

        Damages Sought: $650,000

Count 2 – 42 U.S.C. § 1983 – Retaliation for Protected Activity

    28. Plaintiff exercised his First and Fourteenth Amendment rights by recording household interactions for self-protection, requesting a divorce, and challenging abusive conduct. Defendants retaliated by fabricating police reports, submitting selectively edited recordings, and engaging law enforcement and the judiciary to chill Plaintiff's speech and punish him for asserting his rights.

        Damages: $550,000

Count 3 – 42 U.S.C. § 1983 – Abuse of Process / Malicious Prosecution

    29. Defendants misused judicial mechanisms by initiating and sustaining both criminal and civil proceedings using knowingly false narratives and manipulated evidence. The purpose was not justice but to damage Plaintiff's reputation, remove him from the home, and gain advantage in custody and divorce proceedings. These actions constitute abuse of process and malicious prosecution

        Damages: $700,000

Count 4 – 42 U.S.C. § 1985 – Conspiracy to Interfere With Civil Rights

    30. Defendants conspired to interfere with Plaintiff's civil rights through a pattern of bad-faith legal maneuvers, fraudulent filings, and coordinated suppression of evidence. Their objective was to deprive Plaintiff of his constitutional rights to liberty, reputation, parental autonomy, and a fair legal process.

        Damages: $$600,000

Count 5 – Fourteenth Amendment – Parental Liberty Deprivation

    31. Through coercion, unilateral restriction of access, and strategic manipulation of Plaintiff's children and legal procedures, Defendants directly interfered with Plaintiff's constitutionally protected parental rights. These actions caused significant emotional harm to both Plaintiff and his children and were undertaken with intent to alienate and suppress the parent-child relationship.

Damages: $550,000

―――

VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

- Award compensatory damages in the amount of $3,050,000, as outlined in the Counts for Relief;

- Award punitive damages in the amount of $1,500,000, apportioned as follows:

    a. $500,000 against Defendant 1;

    b. $1,000,000 against Defendant 2;

- Declare that Defendants' actions violated Plaintiff's constitutional rights;

- Issue injunctive relief barring Defendants from continued misuse of legal or police processes;

- Order the correction or removal of all public records related to the denied Temporary Restraining Order, police involvement, dismissed harassment charge;

- Grant attorney's fees and costs pursuant to 42 U.S.C. § 1988 (if applicable);

- Award such other and further relief as this Court deems just and proper.

Plaintiff requests judgment against Defendants jointly and severally.

JURY DEMAND
Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,

―――

Eric Mitman
129 1st Avenue
Glendora, NJ 08029